UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JIMMIE L. SIMPSON,

        Plaintiff,        Case No. 1:15-cv-357

v.        Honorable Janet T. Neff

CORIZON HEALTH, INC. et al.,

        Defendants.

_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983 and state law. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Defendants Nevai, Kingsbury, Paneque, Gulick, Heyns, Russell, Laughhunn, Schad, and Lamb. The Court will serve the complaint against Defendants Kerstein, Stieve, Rogers, Papendick, Neri, Aetna, and Corizon.

**Discussion**

    I.        Factual allegations

Plaintiff Jimmie L. Simpson is a state prisoner incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF), though the events at issue in the complaint occurred while he was incarcerated at Macomb Correctional Facility (MRF) and Kinross Correctional Facility (KCF). Defendants are Corizon Health, Inc. (Corizon) and Aetna Life Insurance Inc. (Aetna), as well as the following employees of the MDOC: Director Daniel Heyns; Contract Purchasers Rebecca Nevai and Lance Kingsbury; Director of Business Services Administration Sergio Paneque; and Contract Compliance Inspector Lia Gulick. He also sues the following individuals who are employees of either the MDOC or Corizon: Chief Medical Officer Jeffrey Stieve; Physicians Keith Papendick and Jesus Neri, Jr.; Registered Nurses S. Laughhunn, Joshua Schad, and Patricia Lamb; Internal Affairs Inspector Richard Russell; and Nurse Practitioner (NP) Penny Rogers. (Compl. 2-4, docket #1.) In a supplement to the complaint,[1] Plaintiff also names Dr. Gary Kerstein, the Chief Medical Officer for "[MDOC]/Corizon," as a defendant. (Suppl. to Compl. docket #5-1, Page ID#71.)

According to Plaintiff, while he was housed at MRF from 1997 to May 27, 2008, he repeatedly complained to healthcare services about pain in his lower back, right wrist and hand, left knee, and shoulders. Plaintiff was eventually diagnosed with "Juvenile Arthritis Disease" and given prescriptions for the nonsteroidal anti-inflammatory drugs (NSAIDs) Naprosyn and Motrin to treat his pain. (*Id.* at 4.) On May 27, 2008, he was transferred to KCF, where he continued to receive

---

[1]After filing the complaint, Plaintiff filed a supplement to the complaint (docket #5-1) along with a motion to supplement the complaint (docket #5). Under Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiff may amend his complaint once as a matter of course before service. The complaint has not been served; thus, Plaintiff's motion to supplement will be granted.

NSAIDs, including Motrin, Mobic, Lodine, and Tylenol, as well as a sleeping agent, Elavil. After his transfer, he repeatedly complained to healthcare services about pain that was radiating into his neck, shoulders, lower back, pelvis, thighs, legs, knees, and feet.

On November 12, 2009, Defendants Nevai, Kingsbury, Paneque, and Gulick, acting on behalf of the MDOC, allegedly entered into a contract with Corizon and Aetna for the provision of medical care to Michigan prisoners.

On December 21, 2010, Nurse Rogers diagnosed Plaintiff with "Paget's Disease,"[2] but refused to treat it due to "non-medical reasons and budget cuts." (*Id.* at 5.) Plaintiff repeatedly complained to healthcare services about painful symptoms, including sensations of burning, stinging, electrical shocks, being stabbed, as well as numbness and tingling radiating down his buttocks to his feet. (*Id.*)

On September 8, 2011, Nurse Rogers ordered x-rays of Plaintiff's lower spine. After reviewing the results, the MDOC's radiologist recommended further assessment with an MRI and further "workup" of Plaintiff's Paget's disease. (*Id.*) Plaintiff received an MRI of his spine on October 19, 2011, "without contrast." (*Id.*) The doctor reviewing the results indicated that the report was delayed because "Postcontrast Images" were not authorized. (*Id.*) Nevertheless, the report revealed a number of issues, including "Severe degener[a]tive disk disease," "Moderate Central Canal Stenosis," "Bilateral Neural Foraminal Stenosis," "Broad based Central disk herniation," "Mild Central Stenosis," and possible "Spondylodiskitis." (*Id.* at 5-6.) Plaintiff alleges that Defendant Stieve prevented the physician from providing adequate medical care and

---

[2]According to the National Institutes of Health, Paget's disease of the bone "is a disorder that involves abnormal bone destruction and regrowth. This results in deformity of the affected bones[,]" which can cause pain and other symptoms. NIH, National Library of Medicine, https://www.nlm.nih.gov/medlineplus/ency/article/000414.htm (visited August 24, 2015).

management of Plaintiff's pain, and prevented Plaintiff from receiving a MRI with "Post Contrast Images," for budgetary reasons. (*Id.* at 6.)

Plaintiff continued to complain about his symptoms, and on October 25, 2011, Nurse Rogers referred him to the MDOC's Pain Management Committee. On November 2, 2011, Defendant Stieve denied Plaintiff "appropriate" pain medication and a referral to a neurosurgeon, despite the fact that the medication Plaintiff was receiving was not adequate. Plaintiff subsequently filed a "formalized complaint" with Dr. Stieve, Dr. Neri and Nurse Rogers regarding a lack of treatment for his pain, which had become so severe that it was affecting his ability to stand or walk for prolonged periods of time. (*Id.* at 6-7.) On December 20, 2011, Plaintiff filed a grievance against Defendants Stieve, Neri and Rogers for depriving him of adequate medical care and a consultation with a neurosurgeon.

On January 10, 2012, Plaintiff filed a "formalized complaint" with Defendants Stieve, Neri and Rogers, detailing his continuing symptoms and asking to be referred to a specialist for consideration of other treatment options. (*Id.* at 7.) On January 17, 2012, Plaintiff filed a grievance against Defendants Stieve, Neri and Rogers regarding their refusal to provide adequate pain medication or to refer him to a specialist.

On March 13, 2012, Nurse Rogers referred Plaintiff to the MDOC's Pain Management Committee for reevaluation of Dr. Stieve's prior decision. Dr. Stieve denied access to additional medication or a consultation with a neurosurgeon.

Plaintiff met with Nurse Rogers on May 23, 2012, and informed her that the sleeping agent did not relieve his pain and was causing other complications, and that the NSAID pain medication was not effective. Plaintiff asked for an epidural injection. Nurse Rogers decided to

discontinue the sleeping agent and told him that she had done all that she could. She referred Plaintiff to Dr. Neri. Plaintiff informed Dr. Neri that the sleeping agent and NSAIDs were not effective. Dr. Neri referred Plaintiff to the MDOC's Pain Management Committee. Once again, on August 29, 2012, Dr. Stieve denied Plaintiff additional pain medication and a consultation with a neurosurgeon.

A few days later, on September 5, 2012, Plaintiff asked Dr. Neri why Dr. Stieve would prescribe Elavil, knowing that Plaintiff suffers harmful side effects from it (i.e., migraines) and that it did not alleviate Plaintiff's symptoms. Dr. Neri stated that he did not have authority to order a "non-formulary" medication; only Dr. Stieve had that authority. (*Id.* at 9.) Plaintiff asked Dr. Neri for a referral to a neurosurgeon. Dr. Neri stated that Dr. Stieve would not approve such a consultation until Plaintiff could no longer walk. Plaintiff continued to complain, and Dr. Neri left the room and returned with Nurse Rogers. Dr. Neri then performed a prostate examination on Plaintiff in front of Nurse Rogers, which involved "[poking], pushing and squeezing" Plaintiff's prostate gland while asking, "[I]s it coming out yet? It is coming out yet?," until Plaintiff's gland was "empty" and there was a "large" amount of "cloudy" fluid on the floor. (*Id.* at 10.)

Plaintiff felt humiliated by this experience. He asked if that was the proper method for performing a prostate exam, and Dr. Neri stated, "This is the proper way of doing a Prostate Examination, you have to feel how large the gland is, feel for any small bumps on the gland and . . . squeeze the fluid out." (*Id.*) Plaintiff subsequently filed a "formalized complaint" with the MDOC's "Bureau of Health Service" and with Defendants Stieve, Neri and Rogers for being denied pain medication and a consultation with a neurosurgeon, and for being subjected to an "inappropriate" prostate examination. (*Id.*)

On September 17, 2012, during Plaintiff's annual screening, Nurse Rogers stated that: Dr. Stieve "[i]s not going to give Plaintiff narcotic for pain"; "no surgeon is going to tear up Plaintiff's back for Spinal Stenosis"; and that Plaintiff would not receive a consultation with a neurosurgeon until he is not able to move his legs or feet. (*Id.* at 11.) In addition, she stated that "[i]f Plaintiff keeps complaining about [t]he Psychotropic medication, all [Dr. Stieve] is going to give Plaintiff . . . is Aspirin and Anti-Inflammatory (NSAID)." (*Id.*) Nurse Rogers attempted to perform a prostate examination, but Plaintiff refused. Three days later, Plaintiff filed a grievance against Defendants Stieve, Rogers and Neri, complaining that they were ignoring his symptoms and forcing him to take a psychotropic medication (Elavil) that gives him migraine headaches, and a sleeping agent (Pamelor) that does not work.

Plaintiff requested a transfer out of KCF. On April 30, 2013, he was transferred to MCF into the care of Dr. Williams Nelson and Physician Assistant (PA) Barbara Bien (who are not Defendants in this action). The next month, on May 19, he filed a "formalized complaint" with the healthcare unit at MCF, requesting a hot water bottle, a walking cane, and a TENS unit[3] for his "severe and painful neurology symptoms." (*Id.* at 12.) Three days later, he filed a grievance complaining that he was denied a hot water bottle, walking cane, and a TENS unit.

On July 13, 2013, Plaintiff filed a "formalized complaint" with the MDOC's "Bureau of Health Care," requesting the names of all doctors and other medical staff who were involved in making decisions on behalf of the Pain Management Committee. (*Id.*) Eleven days later, he filed

---

[3]Plaintiff uses the term "Tents Unit," but the Court assumes that Plaintiff is referring to a TENS device, which transmits an electric current through the skin in order to stimulate nerves and provide relief from pain. *See* http://www.webmd.com/pain-management/tc/transcutaneous-electrical-nerve-stimulation-tens-topic-overview (visited August 24, 2015).

a grievance complaining that "Defendants" denied him this information or prevented him from obtaining it. (*Id.*)

At a medical examination on September 9, 2013, Plaintiff was informed by Dr. Nelson that there was no medical reason for Defendant Neri to "milk" Plaintiff's prostate gland, unless Neri needed a sample to check for an infection. (*Id.*)

In December 2013, Plaintiff filed a criminal complaint with the Michigan state police against Defendants Stieve, Neri, Rogers, Laughhunn, Lamb, and Russell. He also filed a grievance complaining that: (1) Director Heyns, along with Corizon and Aetna, approved and implemented a policy of cutting costs that resulted in less effective medical care for Plaintiff; (2) Defendants Stieve, Neri, and Rogers failed to provide an adequate MRI, failed or refused to provide Plaintiff with a consultation with a neurosurgeon, and failed or refused to provide adequate pain medication; and (3) Defendants Stieve, Neri, Rogers, Lamb, and Laughhunn failed or refused to take corrective action in response to Plaintiff's alleged sexual assault (i.e. prostate exam) by Defendant Neri.

In January 2014, Plaintiff received a response to his criminal complaint, indicating that all matters regarding the denial of health care would be referred to the Internal Affairs division of the MDOC, and that division would review Plaintiff's allegations to determine whether a criminal investigation is warranted.

On February 5, 2014, after Plaintiff continued to complain about his "painful neurology symptoms," PA Bien referred Plaintiff to the MDOC's Pain Management Committee. (*Id.* at 14.) Two weeks later, Dr. Stieve denied Plaintiff additional pain medication and a consultation with a neurosurgeon.

On February 24, 2014, Plaintiff complained to Bien that his pain had spread to the right side of his neck and arms. She referred him to the Pain Management Committee, requesting a MRI of Plaintiff's spine and x-rays of his neck. Plaintiff received x-rays of his spine on February 26, 2014, which revealed "Mild Anterior Spondylosis" of his C5 and C6 vertebrae, "Mild Posterior Spurring" in the C5 vertebra, and "Early Arthritic changes." (*Id.* at 15.) Defendants Stieve and Papendick denied the referral for a MRI, concluding:

> Medical necessity is not demonstrated at this time. Even if there was difficulty with the patient[']s back there would be no surgery to induce more pain than the patient already has. No bladder or bowel issues and a regular X-Ray at DWH would give indication if there was significant change in the patient's Lumbar Spine. Finally[,] the patient should have a single visit consult with The [MDOC]'s Physical Therapist, for Home Exercise Program.

(*Id.* at 15.) Defendants Stieve and Papendick subsequently approved a referral for physical therapy.

A week later, Plaintiff filed a grievance complaining that Stieve and Papendick refused to approve a MRI or a referral to a neurosurgeon, and refused to provide additional pain medication or other treatment options until Plaintiff became incontinent.

Plaintiff met with a physical therapist at Duane Waters Hospital on March 19, 2014. The therapist provided exercise recommendations, but indicated that if they did not help within 90 days, then Plaintiff should be taken to a neurosurgeon for surgery, because there was nothing else that could be done.

Plaintiff met with PA Bien on May 29, 2014, regarding his painful symptoms. She recommended a referral to a neurosurgeon and referred Plaintiff to the Pain Management Committee. The next day, Dr. Papendick and Dr. Stieve denied the referral to a neurosurgeon, stating:

> a.) Criteria not met; b.) Medical necessity not demonstrated at this time; c.) Medical work not up to date; *and* d.) *Review up to date for guidelines.*

(Compl., Page ID#16 (emphasis in original).)  On June 4, 2014, Dr. Stieve issued an addendum denying Plaintiff additional pain medication and a referral to a neurosurgeon.  Stieve allegedly retaliated against Plaintiff by stating that if Elavil is not helping, Plaintiff should stop taking it.  Almost two weeks later, Plaintiff filed a grievance against Defendants Stieve, Neri, Papendick, Corizon, and Aetna complaining that they have a "Blanket Policy" of denying Plaintiff a referral to a neurosurgeon and denying him additional pain medication.  (*Id.* at Page ID#17.)

On July 14, 2014, Plaintiff filed a "formalized complaint" with Dr. Nelson, PA Bien, and Defendants Papendick, Stieve, and Corizon regarding new symptoms, including numbness on the left side of Plaintiff's head radiating down the left side of his face along his left temple and eye, as well as dizziness and feeling disoriented.  Two weeks later, after Plaintiff continued to complain about his symptoms, he filed a grievance against Nelson, Bien, Papendick, and Stieve, complaining that they were ignoring his new symptoms.

On October 21, 2014, Bien recommended that Plaintiff receive an MRI of his spine.  Dr. Papendick rejected the recommendation because the "[c]riteria [are] not met," and "[m]edical necessity [is] not demonstrated," but he approved an electromyograph (EMG) of Plaintiff's lower extremities.  (*Id.* at Page ID##17-18.)

On November 3, 2014, Plaintiff filed a grievance against "Defendants et. al," claiming that they removed $10.00 from his prison account in order to discourage him from filing "formalized medical complaints" and grievances.  (*Id.* at Page ID#18.)  The following day, he filed a grievance against Defendants Nevai, Kingsbury, Paneque and Gulick, claiming that they "knew or should have known" that they put Plaintiff's health at risk by entering into a contract with

Corizon and Aetna, who are "nationally recognized and re[k]nown for civil rights violations of deliberate [i]indifferen[ce] to prisoner's medical needs." (*Id.*)

Plaintiff received an electromyograph (EMG) on November 24. The physician performing the test, Dr. Gray Gurden, was not able to obtain a reflex response from Plaintiff's right knee. Plaintiff informed Dr. Gurden of his ongoing pain and other neurological symptoms, including numbness, tingling, and inability to stand and walk for prolonged periods of time. Dr. Gurden responded that he could not diagnose Plaintiff's symptoms, as the MDOC was only paying him to conduct the EMG.

On December 5, 2014, Plaintiff filed a grievance against Corizon and Aetna regarding their alleged failure to "hire, establish and maintain credential[ed] doctors . . . certified in the field of Orthopedic [sic] and Neurology," and their failure to treat Plaintiff's ongoing symptoms resulting from a herniated disk, a bulging disk, spinal stenosis, and Paget's disease. (*Id.* at Page ID#19.) In January 2015, Plaintiff filed a grievance complaining about Dr. Gurden's inability to diagnose Plaintiff's symptoms because the MDOC would only pay for the EMG.

In a supplement to the complaint (docket #5-1), Plaintiff alleges that the EMG showed evidence of "mild sensory peripheral polyneuropathy." (*Id.* at Page ID#71.) Based on these results, PA Bien recommended that Plaintiff be issued Neurontin. On March 18, 2015, Dr. Kerstein reviewed Bien's recommendation and denied the medication. Plaintiff subsequently filed a grievance against Dr. Kerstein.

Plaintiff asserts that he has suffered permanent injury as a result of Defendants' failure to properly diagnose and/or treat his conditions. He is no longer able to stand or walk in an upright position. He is constantly hunched over to his right side and he walks with a limp. He has

lost the "refle[x]" muscle in his right knee. (Compl. at Page ID#28.) In addition, he has suffered permanent nerve damage, resulting in pain and numbness in his neck, arms, lower back, legs, pelvis and feet.

Based on the foregoing, Plaintiff asserts a number of legal claims against Defendants under § 1983 and state law. For instance, he contends that Defendants retaliated against him in violation of the First Amendment, and subjected him to cruel and unusual punishment in violation of the Eighth Amendment and the Michigan Constitution.

As relief, Plaintiff seeks a declaratory judgment, damages, and a permanent injunction requiring, among other things, that Plaintiff be taken to a neurosurgeon for further diagnosis and treatment.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Nevai, Kingsbury, Paneque, and Gulick

Plaintiff contends that Defendants Nevai, Kingsbury, Paneque and Gulick entered into a contract with Corizon and Aetna in 2009 for the provision of medical care to prisoners in the MDOC. This contract allegedly provided for a "less efficacious course of treatment" for prisoners' health conditions, in order to contain costs. (Compl., Page ID#20.) Plaintiff also contends that Corizon and Aetna are "nationally recognized and known" for committing civil rights violations regarding the failure to provide adequate care. (*Id.* at Page ID#18.) The foregoing allegations are not sufficient to state a claim. Even assuming that Plaintiff has not received adequate medical care, Defendants Nevai, Kingsbury, Paneque, and Gulick are not responsible for Plaintiff's care or for

making any decisions regarding that care. Moreover, Plaintiff fails to allege any plausible connection between the contract that they signed on behalf of the MDOC and the care that he received.

The title of Defendant Gulick's position, "Contract Compliance Inspector," implies that she is responsible for ensuring that Corizon and Aetna are complying with the terms of their agreements with the MDOC. Nevertheless, Gulick is not liable under § 1983 for failing to adequately supervise the conduct of other individuals. As a general matter, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has not alleged that Defendants Nevai, Kingsbury, Paneque and Gulick engaged in any unconstitutional conduct. Thus, Plaintiff does not state a claim against them.

### B. Director Heyns

Plaintiff contends that Director Heyns implemented a "costs cutting and budget restrain[t] [p]olicy," which resulted in a "less efficacious course of treatment," including the denial of readily available pain medication and a consultation with a neurosurgeon for possible surgery.

(Compl., Page ID##13, 20.) Although Heyns could be found liable for implementing a policy that deprived Plaintiff of care for a serious medical need, Plaintiff's vague and conclusory allegations are unsupported by specific facts to set forth a plausible claim. Plaintiff cites MDOC Policy Directive 03.04.100, but he does not point to any specific provision that prevented him from obtaining additional pain medication or any other care for his conditions. Nor does he allege facts supporting an unwritten policy or custom attributable to Defendant Heyns which impacted his care. Indeed, according to his complaint, Corizon and Aetna are responsible for providing medical care for prisoners. As discussed above with respect to Defendant Gulick, Defendant Heyns is not liable for the conduct of those entities, or for that of any individuals involved in Plaintiff's medical care.

Plaintiff also asserts, without support, that Defendant Heyns is responsible for a policy of sexually assaulting him and retaliating against him for filing grievances. These allegations are wholly conclusory. There are no facts alleged in the complaint from which to infer that there is a policy in the MDOC of sexual assaults and retaliation, let alone a policy that is attributable to Defendant Heyns.

Plaintiff also asserts that Director Heyns was a respondent to Plaintiff's grievances; however, liability under § 1983 may not be imposed simply because a supervising official denied an administrative grievance or failed to act on information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Thus, Plaintiff does not state a plausible § 1983 claim against Defendant Heyns.

### C. Inspector Russell

Plaintiff contends that Defendant Russell failed to conduct an investigation into Plaintiff's allegation that Dr. Neri sexually assaulted him during a prostate examination. These allegations do not implicate Plaintiff's constitutional rights, as Plaintiff does not have a constitutional right to have government officials conduct a criminal investigation. A private citizen "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 64 (1986). "The failure to conduct a full and fair investigation and prosecution of an alleged crime does not state a claim unless there is a violation of another recognized constitutional right." *Smallwood v. McDonald*, 805 F.2d 1036 (6th Cir. 1986).

Plaintiff contends that Russell was also involved in responding to unidentified grievances, but Plaintiff does not have a constitutional right to have prison officials effectively investigate his grievances, as he does not have a right to an effective grievance procedure. *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003). Moreover, a prison official's failure to conduct an investigation into a claim of misconduct does not rise to the level of involvement that would make the official liable for such misconduct. *Knop v. Johnson*, 977 F.2d 996, 1014 (6th Cir. 1992); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Consequently, Plaintiff does not state a § 1983 claim against Russell.

### D. Defendants Laughhunn, Schad and Lamb

Plaintiff alleges that Defendants Laughhunn, Schad and Lamb "medical respondents" failed to respond to grievances concerning the denial of medical treatment, the sexual assault by Dr. Neri, and unidentified retaliation against Plaintiff. As indicated with respect to Defendant Heyns, prison officials generally are not liable under § 1983 for denying a prison grievance. Thus, to the extent that Laughhunn, Schad or Lamb denied a grievance with respect to Dr. Neri's alleged assault

or with respect to any retaliation by other officials against Plaintiff, his claim fails because they are not liable for failing to correct the actions of other officials through the prison grievance process. *See Shehee*, 199 F.3d at 300.

Unlike Defendants Heyns and Russell, however, Defendants Laughhunn, Schad and Lamb are nurses; thus, they may have had some involvement in the treatment decisions regarding Plaintiff's medical care, or some ability to make decisions regarding his need for ongoing care. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental

effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff's allegations against Laughhunn, Schad and Lamb fail to state an Eighth Amendment claim because they are too vague. The Court cannot discern what grievances were presented to them or how they responded, let alone that they were deliberately indifferent to an objectively serious risk of harm. Consequently, Plaintiff does not state a deliberate indifference claim.

Plaintiff implies that their actions were taken in retaliation for his protected conduct, but this allegation is both vague and conclusory. Thus, Plaintiff does not state a claim under § 1983 against Laughhunn, Schad and Lamb. *See Iqbal*, 556 U.S. at 678. (noting that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a claim).

### E.  Remaining Defendants

The remaining Defendants were involved in, or responsible for, decisions that were made about Plaintiff's care or the allegedly improper prostate examination. Defendants Kerstein,

Rogers, Stieve, Neri, and Papendick allegedly denied or refused to provide additional pain medication or diagnostic care for Plaintiff's condition. Plaintiff contends that they were acting according to policies established by Defendants Corizon and Aetna. In addition, Dr. Neri allegedly assaulted Plaintiff. At this stage of the proceedings, the Court finds that Plaintiff's allegations suffice to state at least an Eighth Amendment claim against Defendants Kerstein, Rogers, Stieve, Papendick, Neri, Aetna, and Corizon.

### III. Supplemental Jurisdiction

Plaintiff purports to assert claims against Defendants under state law. To the extent that he raises such claims against Defendants Nevai, Kingsbury, Paneque, Gulick, Heyns, Russell, Laughhunn, Schad, and Lamb, they will be dismissed without prejudice. Because, the federal claims against the foregoing defendants will be dismissed, the Court declines to exercise supplemental jurisdiction over any claims against them that arise under state law. "Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." *Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *see* 28 U.S.C. § 1367(c)(3).

### **Conclusion**

After conducting the review required by the Prison Litigation Reform Act, the Court determines that the claims against Defendants Nevai, Kingsbury, Paneque, Gulick, Heyns, Russell, Laughhunn, Schad, and Lamb under 42 U.S.C. § 1983 will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). In addition, the claims against these Defendants under state law will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). The Court will serve the complaint, as supplemented, against Defendants

Kerstein, Rogers, Stieve, Neri, Papendick, Corizon, and Aetna.

An Order consistent with this Opinion will be entered.


Dated: <u>September 8, 2015</u>            <u>/s/ Janet T. Neff                    </u>
                                            Janet T. Neff
                                            United States District Judge